UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA </br></br> v. </br></br> (1) CLS GLOBAL FZC LLC, </br></br> Defendant | ) </br> ) </br> ) </br> ) Criminal No. 24-cr-10293-AK </br> ) </br> ) </br> ) </br> ) </br> ) |

JOINT SENTENCING MEMORANDUM

The parties respectfully submit this joint memorandum in advance of the April 2, 2024 sentencing of the defendant, CLS Global FZC LLC ("CLS Global").

On September 19, 2024, the grand jury returned an Indictment charging CLS Global with wire fraud and conspiracy to commit market manipulation and wire fraud. Dkt. 1. The charges are based on CLS Global's manipulation of cryptocurrency trading volumes for clients, including wash trading that CLS Global executed in connection with a Federal Bureau of Investigation (FBI) sting operation in the summer of 2024. CLS Global tendered a guilty plea to the two-count Indictment on February 7, 2025 pursuant to a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C). Dkt. 10, 20.

The parties now ask the Court to accept the binding plea agreement and sentence CLS Global according to its terms. The recommended disposition in the plea agreement—a three-year term of probation, a fine of $428,059.63, and forfeiture—is part of a larger resolution between CLS Global, the government, and the U.S. Securities and Exchange Commission ("SEC"), which filed a parallel enforcement action against CLS Global relating to the same conduct. Case No. 24-cv-12590. The terms of the plea agreement and the proposed Consent Judgment in the SEC's

action (Dkt. 7) prohibit CLS Global from participating in cryptocurrency offerings on trading platforms that CLS knows, or with reasonable diligence should know, are available to investors located in the United States and obligate CLS Global to submit annual certifications of compliance to the SEC during the three-year term of probation.

I.   **Offense Conduct**

The following facts are set forth in greater detail in Exhibit B to the plea agreement ("Agreed Upon Statement of Facts and Relevant Considerations") and in the presentence investigation report (PSR).

The defendant, CLS Global, was registered in the United Arab Emirates (UAE). It offered cryptocurrency "market making" services on its public website. These services included active monitoring of trading and price fluctuations, trading to capitalize on fluctuations, and related consulting services. CLS Global partnered with cryptocurrency exchanges and publicly advertised the names of some its clients. PSR ¶¶8-11.

Privately, CLS Global offered its clients illegal services that included market manipulation. Clients paid CLS Global to engage in manipulative trades that artificially increased the trading price and volume of the clients' cryptocurrencies for the purpose of inducing others to buy them. CLS Global used multiple cryptocurrency wallets to hide the source of the manipulative trades. After inflating trading volumes and inducing others to buy, CLS Global and its clients sold cryptocurrencies for a profit, at artificially and unlawfully inflated prices. PSR ¶19.

CLS Global had over 50 employees, including co-defendant Andrey Zhorzhes, who lived in the UAE. Beginning in June 2024, Zhorzhes communicated with individuals that he believed were promoters of a cryptocurrency company named NexFundAI, which was created as part of an undercover operation by the FBI. Zhorzhes stated that CLS Global's objective was to "stimulate

organic demand and attract new users and investors for token purchases." He explained that CLS Global used an algorithm that "basically does self-trades, buying and selling" to generate volume so that a token could meet cryptocurrency exchange listing requirements and so "people get interested in trading it." Zhorzhes disclosed that CLS Global traded "from multiple wallets so it's not visible" and so that the trading "looks like organic buying and selling." He stated that CLS Global had been generating volume for "many clients," and he acknowledged that CLS Global's volume generation service involved "wash-trading." PSR ¶¶13, 20, 25-27.

Through multiple conversations over Telegram messages and videoconferences, Zhorzhes finalized an agreement with the purported NexFundAI promoters for CLS Global to provide an algorithm that "gathers all data from the market, such as volumes, order flow, average order size and frequency to perform market trades allowing to grow the trading volume[.]" Zhorzhes showed the purported NexFundAI promoters CLS Global's "dashboard" for tracking CLS Global's "Volume Support" and differentiating between "CLS volume" and "external volume." Between August and September 2024, Zhorzhes and several traders for CLS Global bought and sold the NexFundAI token on the Uniswap cryptocurrency exchange using multiple wallets. During this time, the CLS Global employees executed hundreds of trades to meet a daily trading volume target of approximately $32,000. The employees also provided the purported NexFundAI promoters with updates about the trading volume and examples of other tokens for which CLS Global had executed a "trading strategy." PSR ¶¶28-37.

II.     **Plea Agreement Terms**

The government and CLS Global entered into a plea agreement ("Agreement") pursuant to Rule 11(c)(1)(C) in January 2025. Among other things, the agreement requires CLS Global to plead guilty to the two counts in the Superseding Indictment (one count of conspiracy to commit

market manipulation and wire fraud, in violation of 18 U.S.C. § 371, and one count of wire fraud, in violation of 18 U.S.C. § 1343) and to waive its right to appeal or collaterally attack its conviction and sentence.  Agreement ¶¶1, 6.

With respect to the Guidelines calculations, the plea agreement calculates defendant's offense level under USSG § 8C2.3(a) based on the base offense level for fraud offenses, an enhancement because a substantial part of the offense was committed from outside the United States and the offense involved sophisticated means.[1]  The agreement calculates the defendant's culpability score under USSG § 8C2.5 to be 6, because the defendant had more than 50 employees and an individual within "substantial authority personnel" participated in, condoned, or was willfully ignorant of the offense, and because the defendant clearly demonstrated recognition and affirmative acceptance of responsibility for its criminal conduct.  Finally, under USSG § 8D1.2(a)(1), the Guidelines provide for a term of probation of at least one year but not more than five years.  Agreement ¶4.

Under the plea agreement, the parties agree on the following disposition: a fine of $428,059.63 (to be reduced by any amount recovered through forfeiture and any amount paid to the SEC); forfeiture of funds in specified cryptocurrency exchange accounts; three years of probation with specific conditions coinciding with the conditions agreed upon by the defendant

---

[1] The plea agreement and PSR differ in their Guidelines calculations in that the PSR increases the offense level to 12 (rather than merely by two levels) based on the instruction at the end of USSG § 2B1.1(b)(10) ("If the resulting offense level is less than level 12, increase to level 12.").  The PSR's approach appears to be correct.  Consequently, the base fine under USSG § 8C2.4 is $70,000 for offense level 12 (rather than $25,000 for offense level 9).  As discussed below, the proposed fine of $428,059.63 relates to the monetary components of the proposed Consent Judgment in the SEC enforcement action, so this difference in the offense level and base fine does not affect the parties' agreed upon fine amount.

and the SEC in the parallel case; and the mandatory special assessment of $800.[2]  Agreement ¶¶5, 7, 8, and Exhibit A ("Agreed Upon Conditions of Probation").

The plea agreement includes an agreed-upon statement of relevant considerations, which states:

> Upon learning of the charges in this case and the related enforcement action brought by the SEC, CLS GLOBAL promptly retained counsel to assist with accepting legal responsibility for the [charged] conduct, making voluntary disclosures to U.S. authorities, and augmenting compliance controls and company policy to address and mitigate U.S. legal risks.  These efforts included, prior to the imposition of conditions by the U.S. authorities, an internal review of service offerings for compliance with U.S. law, revisions to licensing agreements, and modifications to CLS Global's website to prevent services from being offered to U.S.-based persons.
>
> As a result of these efforts, and the undertakings by CLS GLOBAL in connection with the resolution of this matter and the parallel proceeding brought by the SEC, CLS GLOBAL has demonstrated recognition and affirmative acceptance of responsibility under USSG § 8C2.5(g)(3) and responded to the charges in this case in a manner that serves as a significant mitigating consideration in connection with this resolution and sentencing.

Agreement, Exhibit B ¶¶25-26.

### III.    Presentence Investigation Report (PSR)

The PSR, dated March 18, 2025, applies the same Guidelines provisions (except as noted above) to reach a total offense level of 12 (corresponding to a base fine of $70,000), a culpability score of 6 (corresponding to minimum and maximum multipliers of 1.20 and 2.40), an advisory Guidelines fine range of $84,000 to $168,000, and a term of probation of between one and five years.  PSR ¶¶61-88.

---

[2] The agreed disposition does not include restitution, which requires "an identifiable victim."  USSG § 8B1.1.  As the PSR notes: "The offense had diffuse market-wide impact, and the losses to dispersed market participants cannot be reasonably estimated based on available information.  Therefore, individual victims and losses are not readily identifiable."  PSR ¶41.

**IV.     Sentence Recommendation**

The parties ask the Court to accept the agreed disposition set forth in the plea agreement and sentence CLS Global accordingly.

With respect to organizational defendants, the Guidelines advise a court to order a term of probation if, for example, such a term is: (1) "necessary to ensure that changes are made within the organization to reduce the likelihood of future criminal conduct," USSG § 8D1.1(a)(6); or (2) "necessary to accomplish one or more of the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2)," USSG § 8D1.1(a)(8), which include "the need for the sentence imposed … (B) to afford adequate deterrence to criminal conduct" and "(C) to protect the public from further crimes of the defendant[.]" The applicable period of probation is between one and five years. USSG § 8D1.2(a)(1).

In this case, a three-year term of probation including the agreed upon conditions is appropriate to deter fraudulent manipulation of cryptocurrency markets and to protect U.S. investors from such market manipulation. The recommended term and conditions of probation propose to accomplish these goals of deterrence and protection of U.S. markets by effectively excluding CLS Global from U.S. markets entirely for three years. CLS Global's compliance expectations for that three-year period are set forth in the proposed Consent Judgment and Exhibit A to the plea agreement ("Agreed Upon Terms of Probation"). In most relevant part, CLS Global (including its personnel) will be prohibited from participating, "directly or indirectly, in any issuance, purchase, offer, or sale of any cryptocurrency on any cryptocurrency trading platform that CLS Global knows, or with reasonable diligence should know, is available to investors in the United States." Dkt. 10 at 9. It will be required to take reasonable steps as necessary to ensure that its clients do not include cryptocurrency promoters in the United States. It will be obligated to implement policies and procedures "reasonably designed" to ensure its compliance with these conditions. *Id.* at 10. And it will be required to submit annual certifications to

the SEC of its compliance with these conditions and immediately notify the SEC of any non-compliance.

These guardrails reflect the judgment of the government and the SEC (the primary securities regulator) that CLS Global's undertakings are sufficient to protect U.S.-based investors.  The Guidelines advise that remedial orders as to organizational defendants "should be coordinated with any administrative or civil actions taken by the appropriate governmental regulatory authority."  USSG § 8B1.2, Commentary.  By imposing the obligations from the Consent Judgment as conditions of probation in this case, the Court can ensure that the criminal and civil resolutions are in sync and that the government has significant recourse in the event that CLS Global fails to abide by them.

With respect to a fine, the Guidelines instruct that a court should consider, generally, the factors under 18 U.S.C. § 3553(a), as well as "the organization's role in the offense," "any collateral consequences of conviction, including civil obligations arising from the organization's conduct," and "whether the organization failed to have, at the time of the instant offense, an effective compliance and ethics program," among other factors. USSG § 8B2.8.  The fine should "deter organizational criminal conduct" and "provide incentives for organizations to maintain internal mechanisms for preventing, detecting, and reporting criminal conduct."  USSG § 8C2.4, Commentary.

The proposed fine amount addresses these considerations.  As noted in the PSR: "The fine amount was negotiated in conjunction with CLS Global's resolution with the civil SEC action and includes the same $425,000 civil penalty, disgorgement of $3,000, and prejudgment interest."  PSR ¶90.  Both on its own and combined with the restrictive conditions of probation, the total amount to be paid by CLS Global is substantial but appropriately proportioned to the conduct charged in the Indictment.  The proposed fine satisfies the statutory sentencing factors, including providing just punishment and affording adequate deterrence.

## CONCLUSION

For the reasons stated, the recommended sentence is sufficient but not greater than necessary to achieve the goals of sentencing. Therefore, the parties jointly request that the Court accept the binding plea agreement and sentence CLS Global according to its terms.

    Respectfully submitted,

    LEAH B. FOLEY
    United States Attorney

    */s/ David M. Holcomb*
    DAVID M. HOLCOMB
    CHRISTOPHER J. MARKHAM
    Assistant U.S. Attorneys


    CLS GLOBAL FZC LLC
    By its attorney

    */s/ Lex Urban*
    LEX URBAN
    Urban Law PLLC

Date:  March 26, 2025

CERTIFICATE OF SERVICE

      I hereby certify that this document, filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

Dated: March 26, 2025

                                          */s/  David M. Holcomb*
                                          DAVID M. HOLCOMB
                                          Assistant U.S. Attorney